IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CARBONE'S FINE FOODS AND WINES LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | JURY DEMAND |
| | § | |
| THE MAJOR FOOD GROUP LLC, | § | |
| MAJOR INTELLECTUAL LLC, | § | |
| CARBONE RESTAURANT LLC, and | § | |
| CARBONE CAFÉ LLC | § | |
| | § | |
| Defendants et. al. | § | |
| | § | |
| | § | |

---

## PLAINTIFF'S ORIGINAL COMPLAINT

---

Carbone's Fine Food and Wine, LLC files this Original Complaint against Carbone LLC, Major Food Group, LLC, and Major Intellectual LLC ("Defendant" or "Carbone MFG" or collectively, "Defendants") and would respectfully show the Court as follows:

### PARTIES

1.      Carbone's Fine Food & Wine, LLC is a Texas corporation with its principal place of business located at 4208 Oak Lawn Ave, Dallas Texas, 75219.

2.      Upon information and belief, Carbone LLC is a Texas corporation having its principal place of business located at 1617 Hi Line Drive, Dallas, Texas 75207, and Plaintiff may effectuate service of process upon Defendant at that address. On information and belief, Carbone LLC is the corporation believed to be responsible for the operation of the Carbone restaurant located on Oak Lawn Avenue down the street from the original Carbone's Dallas.

3.      Upon information and belief, Defendant Major Food Group LLC was registered under the laws of Delaware on or around June 3, 2011, with its principal place of business located at 99 E 52nd St, New York City, New York, 10022, United States.

4.      Upon information and belief, Defendant Major Intellectual LLC is a limited liability company organized under the laws of Delaware on or around June 3, 2011, with its principal place of business located at 110 Lafayette St., Floor 3, New York, New York, 10013.

## JURISDICTION AND VENUE

3.      The United States District Court for the Northern District of Texas has jurisdiction over this action pursuant to the provisions of 28 U.S.C. § 1331 in that this matter is a civil action arising under the Constitution, laws, or treaties of the United States.  Specifically, this action involves federal trademark rights, federal Lanham Act violations, and other federal causes of action.  Subject matter jurisdiction over those of Plaintiff's claims that arise under state law is based upon the principles of supplemental jurisdiction set forth in 28 U.S.C. § 1367, and the provisions of 28 U.S.C. § 1338(b) as an action asserting a claim for Texas trademark infringement, dilution and unfair competition joined with a substantial and related claim under the federal trademark laws.

4.      Plaintiff is informed and believes and thereupon alleges that venue in this action is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

### CONFUSION ON DISPLAY IN THE MARKET

5.      Julian Barsotti is the head chef and founder of Plaintiff Carbone's Fine Foods and Wine ("Carbone's Dallas" or "Plaintiff").

6.     On March 2, 2022, Carbone's Dallas investor, Karen Hixon, walked into a local Central Market store and was shocked to find a large display with Carbone's common law trademark (the "Mark" or CARBONE'S mark) prominently featured at both the top and side of the display. Seeing the CARBONE'S mark and logos, and unaware that Carbone's Dallas had launched a new pasta sauce line for sale at Central Market grocery stores, she took a photograph of the display and forwarded it to Carbone's Owner-Chef Julian Barsotti. Mr. Barsotti had to correct Karen Hixon's confusion. Mr. Barsotti confirmed the marks and logos belonged to Carbone's Dallas, but that retail pasta sauces were the Defendant's products being sold at Central Market.

**PLAINTIFF'S ORIGINAL COMPLAINT**



(Declaration of Julian Barsotti at ¶ 11, Exh. 2.) (Central Market Display)

7.     The detailed three-dimensional sign at the top and side of the display are direct copies of the CARBONE'S trademark as featured prominently in relation to Carbone's Fine Food and Wine Restaurant, including on Carbone's website, menu, pre-packaged food, and physical location:



(Screenshot from http://carbonesdallas.com/, last visited April 5, 2022);



(Carbone's     Sunday     Dinner     Menu,     available     for     download     at

http://carbonesdallas.com/menus/carbones_sundaydinner.pdf, last visited April 5, 2022);



(Declaration of Jonathan Neitzel at ¶27, Exh. U (Photo of Carbone's Pre-Packaged

Foods));



(*Id*. (Photo of Carbone's Pre-Packaged Foods));

**PLAINTIFF'S ORIGINAL COMPLAINT**



*(Id.* (Photo of Carbone's Pre-Packaged Foods));



*(Id.* (Photo of Carbone's Pre-Packaged Foods));

**PLAINTIFF'S ORIGINAL COMPLAINT**



(*Id*. at ¶ 4, Exh. C (Photo of Carbone's exterior signage));



(*Id*. (Photo of Carbone's exterior signage));

8.      Unfortunately, the use of the CARBONE's logo was not the only infringement and theft from Plaintiff in the display.  The website display contains direct copies of the text on the Carbone's website, including the words "Carbone's Fine Food and Wine is an Italian American restaurant & grocery store located in Dallas, Texas" and "Our goal is to celebrate Italian American food traditions.  Our commitment is to make as many products as possible in house and source from artisan American producers":



(Screenshot from http://carbonesdallas.com/our-mission/, last visited April 5, 2022).

9.      In contrast to the signage, the jars of sauce on the shelves are not related to, authorized by, or licensed by Carbone's Dallas.  Instead, on information and belief, the jars of sauce are mass-produced by Defendants, including Major Food Group, LLC, a New York City owned food conglomerate that is attempting to move into the Texas market using the Carbone's mark.

10.     On information and belief, Defendants are purposefully attempting to trade on the Carbone's name and hard-earned reputation in Texas to confuse consumers into purchasing the Carbone MFG packaged sauces.

11.     Unfortunately, not only are Defendants wrongfully using Carbone's trademark to sell pre-packaged sauces—which, as further detailed herein, directly competes with the sale of pre-packaged sauces under the CARBONE'S mark—on information and belief, Defendants have just opened a restaurant in Dallas, Texas under the CARBONE name, which also directly competes with Texas Plaintiff's Carbone's Fine Food and Wine restaurant.

12.     On information and belief, Defendants have conspired to sell both prepackaged food and restaurant fare in Texas, despite the knowledge that Plaintiff owned a superior claim in Texas to the CARBONE'S mark and have actively encouraged confusion amongst consumers in the Texas market.

13.     On information and belief, Defendants' wrongful use and infringement of the CARBONE'S mark was and is being done with knowledge of Plaintiff's superior rights to the Carbone mark because, *inter alia*, these acts happened **after** Defendants received a cease-and-desist letter mailed in December 2021.

## CARBONE'S FINE FOOD AND WINES – A TEXAS STAPLE

14.     Since its inception, Plaintiff has been in the business of providing quality Italian food on Oak Lawn Avenue near downtown Dallas under the name Carbone's Fine Food and Wine—also referred to and marketed as Carbone's.

15.     Carbone's Fine Wine & Food offers full-service restaurant dining, to-go food and wine sales, and retail sales of pre-packaged sauces and foods.

16.     Plaintiff's Founder, Executive Chef Julian Barsotti has been a staple of the Dallas restaurant scene for thirteen years and is the driving force behind many Dallas restaurants such as Fachini, Sprezza, and Nonna.

17.     Plaintiff first began using the CARBONE'S mark to identify its restaurant services in early 2011.  Specifically, Mr. Barsotti first began using the Carbone's name in commerce via the process of the getting the permits and funding necessary to open a restaurant.  The attached filings from the Texas Secretary of State shows that Mr. Barsotti founded Carbone's Fine Food & Wine as of May 25, 2011, and Carbone's Fine Food & Wine as of June 16, 2011.  (**Exhibits 1 & 2**).

18.     Additional documents show that Mr. Barsotti's use of the CARBONE'S mark was consistent and continuous throughout 2011.  These include the lease for the 4208 Oak Lawn Avenue location, the inclusion of the CARBONE'S mark in investment materials presented to restaurant investors, the application for and acquisition of a liquor license, and the placement of the Carbone's sign on the exterior of the building.

19.     As the renovation and buildout of the 4208 Oak Lawn Avenue location continued, Plaintiff began marketing via media interviews and articles to publicize the offering of restaurant services and sales of pre-packaged food under the CARBONE'S mark.

20.     For example, in an article written in August 2011, Mike Hiller described the upcoming Carbone's restaurant as a "re-imagined Italian American grocery store, which will include meats, produce, wines, dry goods, and a deli and lunch counter" as well as including a "central area will double as a restaurant."  (*See* **Exhibit 3** hereto). The article further describes the food both prepacked and for dine-in use that will be offered at Carbone's with a scheduled opening in early 2012.

21.     Carbone's officially opened to the public on April 17, 2012.

22.     The Internet Archive, at web.archive.org, shows the use of Plaintiffs' CarbonesDallas.com website as early as April 19, 2012:



(Declaration of Jonathan Neitzel at ¶14, Exh. L, M (Screenshot from https://webarchive.org/web/20120419214129/http://carbonesdallas.com:80, last visited April 4, 2022).

23.     From the beginning, Carbone's has received outstanding consistent critical reviews—all of which serve as marketing to potential consumers to Carbone's.

24.     An article from opening day, April 17, 2012, by the Dallas Morning News identified Carbone's as the source of what "might be the best meatball you'll ever put into your mouth: tender and yielding, intensely flavorful, and breathlessly light." (**Exhibit 4**).

25.     On April 18, 2012, the day following the opening, a review by Steve Doyle identified Carbone's as the source of house-made ricotta and mozzarella, pastas and sauces, as well as pre-packaged foods available for carry-out or dine-in. (**Exhibit 5**).  That review also

featured a photo of the Carbone's logo as featured on the sign on the exterior of the restaurant. (*See id*.).

26.     Yet further, on June 14, 2012, a review by Scott Reitz for the Dallas Observer noted that Carbone's is the source of a "chicken Parm sandwich will fast become your new lunchtime friend" and states that Carbone's is "a new Eye-talian spot in town, and it doesn't depend upon its family name, its history or familiarity to win its customers.  It relies on good food." (**Exhibit 6**).

27.     Carbone's has also received 4 stars from the Dallas Morning News, and numerous accolades from Texas Monthly, D Magazine, the Dallas Observer, among various other accolades—each of which serve to identify Carbone's as the source of restaurant services and pre-packaged foods. (Declaration of Jonathan Neitzel at ¶12, Exh. K)  Since opening in 2012, a set of black and white photos have hung on the wall that document the history of the CARBONE'S mark. Carbone's Fine Foods & Liquors was a long-standing restaurant that existed in New Jersey from 1941 to 1994 that was founded and operated by Mr. Barsotti's great Grandfather, Angelo Carbone. (Declaration of Julian Barsotti at ¶6, Exh. 1) That restaurant served as both the namesake and the inspiration for the current Carbone's to open in Dallas.  By opening and operating Carbone's, Mr. Barsotti has merely been continuing a tradition for providing high quality Italian food served under the Carbone's name. Carbone's sign from the 1970s (on the right) and from present day (on the left) are shown below.




(Declaration of Julian Barsotti at ¶ 6, Exh. 1)

28.     In the decade following the initial fanfare of the Carbone's opening, Carbone's has become a ubiquitous and stellar member of the Dallas restaurant scene.

29.     Carbone's has received numerous awards and countless press attention. Indeed, search results for Carbone's on both the Dallas Morning News and the Dallas Observer includes dozens of mentions, whereas the Dallas Observer has well over 100 mentions or articles about Carbone's—all of which cement the CARBONE'S mark as being the source of excellent restaurant food and prepackaged foods. (Declaration of Jonathan Neitzel ¶ 12)

30.     Further, Plaintiff's use of the CARBONE'S mark in relation to restaurant services and pre-packaged food is unique in the Texas market. A search on google maps for "Carbone" only returns two results, Carbone's and Carbone Express LLP, of which the latter is not a restaurant or food related company.

31.     Yet further, Plaintiff has used the CARBONE'S mark continuously and intensively since 2011 throughout Texas.

32.     Customers and potential customers identify the CARBONE'S mark as indicating restaurant services and pre-packaged food that originates with the Plaintiff.

33.     For years, whenever consumers have seen the CARBONE'S mark either in the restaurant, on pre-packaged foods, or via carryout and catering, they have recognized the CARBONE'S mark as an indicator of the high quality that consumers have come to expect from Plaintiff.   Consequently, Plaintiff has developed substantial recognition among the consuming public for its high-quality products sold under the Mark and enjoys extensive goodwill associated with its Mark.

34.     Simply put, as a result of its continued use, marketing of its products and other business generation efforts to promote the CARBONE'S mark, the CARBONE'S mark has become well-known in commerce to identify Plaintiff's goods and services.

### CARBONE MFG – A TEXAS NEWCOMER

35.     Major Food Group LLC is a restaurant and hospitality company that operates Carbone, an Italian-American restaurant that opened in New York in or around March 2013.

36.     Mario Carbone, Rich Torrisi, and Jeff Zalaznick are the founders and Managing Partners of Major Food Group LLC.

37.     Mario Carbone is also the chef of Carbone Restaurant, which is Mario Carbone's namesake restaurant.

38.     As shown in the photo in paragraph 5 of this Complaint, Defendant has begun marketing, offering for sale, and, on information and belief, selling pre-packaged food in the form of pasta sauce in the Dallas area and throughout Texas.

39.     On information and belief, the sale of Defendants' CARBONE product in the Central Market store is not an isolated incident.  Plaintiff has learned, on information and belief,

that Defendant intends to sell a line of prepackaged Italian sauces that directly compete with the prepackaged sauces and foods that have been sold in connection with the Carbone's (the Texas one) mark since at least 2012. Such food items have comparable prices so buyers generally take less care in selecting them, thereby increasing the risk of confusion. According to a March 29, 2021, Bloomberg article, these sauces will be sold under the brand name Carbone.  (*See* **Exhibit 7**).

40.     Unfortunately, Defendants are not content to merely wrongfully use the CARBONE'S mark to confuse Texas consumers into purchasing pre-packaged sauces that they think were made by Carbone's—Defendants have just opened a directly competing Italian restaurant under the name Carbone in Dallas.

41.     What is more, and on information and belief, Carbone MFG has launched its own website at https://carbonedallas.com/ within the last 30 days. This website's URL is only a letter different than the URL of the website Carbone's Dallas has operated for over ten years, since as early as April 19, 2012, at http://carbonesdallas.com/.

42.     On information and belief, the competing Carbone MFG restaurant not only serves the same type of cuisine as Carbone's (Italian), but the location of the Carbone MFG restaurant is off Oak Lawn Avenue, on the same side of the same street in Dallas—a mere two miles from Carbone's Dallas.

43.     Both parties use the same advertising channels.  Both rely in part on their websites and social media—including the same platforms such as Facebook, Instagram, and a website URL with only one additional letter—and also expand their presence in Texas, including the Dallas area, via online review websites and accounts such as Yelp, Trip Advisor, and Google.

44.     On information and belief, Defendants opened their restaurant under the Carbone name in Dallas on April 1, 2021.

## ACTUAL CONFUSION BETWEEN CARBONE'S AND CARBONE IS ALREADY RAMPANT

45.     Even before Defendants' Carbone restaurant opened, confusion between Carbone's and Carbone was widespread.

46.     A Dallas Morning News article that announced the opening date for Carbone also explicitly recognized the likelihood of confusion that will arise if the Carbone restaurant opens:

> Carbone is not to be confused with Carbone's Fine Food & Wine, an Italian restaurant and grocery on Oak Lawn Avenue in Dallas. Carbone's is operated by Highland Park restaurateur Julian Barsotti, who runs some of Dallas' best Italian restaurants with Nonna, Sprezza and Fachini. (Summers is an investor in these restaurants, too.)

> Carbone's in Dallas opened in 2012 and isn't related to Carbone in New York, which opened in 2013. Carbone's was named for Barsotti's great-grandfather's restaurants that operated in New York and New Jersey for more than 60 years.

(**Exhibit 8**).

47.     In addition, that article also has an inset photograph of a Carbone's dish with the following caption: "Don't confuse Carbone's Fine Food & Wine with Carbone. Pictured here: Carbone's tortellini and Italian sausage with vodka sauce." The photo shows food from Plaintiff's restaurant.

48.     What is more, Defendants' actions have already caused consumers to believe that the Carbone's Dallas is associated with the New York Carbone. Indeed, documented instances of actual confusion are rampant and abundant.

49.     In one example, a consumer left a review on Yelp demonstrating actual confusion between Carbone's Dallas and Carbone MFG as displayed in the image below:

**PLAINTIFF'S ORIGINAL COMPLAINT**



(Declaration of Jonathan Neitzel at ¶ 28, Exh. V. (February 27, 2022 Review of Carbone's, Available at https://www.yelp.com/biz/carbones-dallas?sort_by=date_desc, last visited April 5, 2022)). As shown in the above, that consumer stated that they "Went to [Carbone's Dallas] thinking it was the new opening of the original Carbone in New York!"

50.     Perhaps the most blatant evidence of the confusion is the fact that dozens of consumers are calling Carbone's Dallas to attempt to contact Carbone MFG. These calls from confused consumers became so consistent and voluminous that the staff at Carbone's Dallas began keeping business records of these calls on a document entitled "Confusion List." By way of example, on March 30, 2022 alone, Carbone's Dallas received and recorded over twenty calls wherein the consumer intended to contact Carbone MFG but mistakenly called Carbone's Dallas instead. An image of that log is below:



(Declaration of Jonathan Neitzel at ¶30, Exh. X). ("Confusion List")

51.     The confusion between Carbone's Dallas and the competing Carbone MFG restaurant is not limited to consumers. Even the City of Dallas mistakenly sent Carbone MFG's account invoice for its food establishment permit to Carbone's Dallas A picture of that account invoice is displayed below:



(Declaration of Jonathan Neitzel at ¶ 34, Exh. AA) (City of Dallas Permit Invoice).

52.    Similarly, vendors have sent packages and invoices intended for Carbone MFG to Carbone's Dallas. One such example is displayed in the image below:



(*Id.* at ¶¶ 34, 35, Exhs. AA, BB) (Shipping Invoice).

53.     The foregoing confirms the common-sense consequence of Defendants' actions: by using a nearly identical mark (Carbone's v Carbone) in association with the same goods and services (Italian restaurants and pre-packaged foods), consumers are and will be confused, misled, or deceived as to the source of the goods and services.

54.     Accordingly, Defendant's sales of the infringing products and services infringe Plaintiff's senior and superior common law rights in the Carbone mark in Texas.

55.     Further, Defendants' sales of the infringing products and services diminishes and dilutes the value of Plaintiff's Mark.

56.     Yet further, Defendants' sales of the infringing products without Plaintiff's permission are diluting the value of the Mark and damaging the goodwill and high-quality reputation of Plaintiff's branded products.

57.     On information and belief, Defendants will continue to undertake such unlawful activities which infringe Plaintiff's trademark rights in its Mark unless enjoined by this Court.

58.     As a consequence of these activities and the impairment to Plaintiff's goodwill, reputation and customer base, Plaintiff has been irreparably harmed to an extent not yet determined and will continue to be irreparably damaged by such acts in the future unless Defendant is preliminarily and permanently enjoined by this Court from committing further infringing acts.

**CARBONE'S (THE NEW YORK ONE) ACTIONS ARE WILLFUL**

59.     On information and belief, Defendants above-described activities have been willful.

60.     In December 2021, Plaintiff mailed a cease-and-desist letter to Defendants that identified Plaintiff as the owner of the CARBONE'S mark and warned Defendants that their unauthorized use of the mark would constitute trademark infringement.  Defendants failed to

respond to the letter, and instead, ignored it and proceeded to engage in the actions described herein.

## CARBONE MFG'S TRADEMARKS

61.     On information and belief, Defendants purport to be the owners or applicants of at least three registered or applied for U.S. trademarks that utilize the term CARBONE.

62.     As further addressed below, Defendants have wrongfully been issued their registered Carbone mark.

63.     By way of background, Major Food Group LLC operates or previously operated multiple restaurants: Contessa, Santina, Dirty French, Sadelle's, and ZZ's Clam Bar.

64.     Major Intellectual LLC is listed as the owner of U.S. Trademark registrations and applications for marks associated with Major Food Group LLC's restaurants, including CONTESSA TRATTORIA (Reg No. 6532159), SANTINA (Reg No. 5166283), DIRTY FRENCH (Reg No. 4642433), SADELLE'S (Reg. No. 4893426), and ZZ'S CLAM BAR (Reg No. 4407810).

65.     Accordingly, on information and belief, Major Intellectual LLC is associated with Major Food Group LLC and acts as a holding entity for the trademarks associated with Major Food Group's restaurants.

66.     Based on publicly available records at the U.S. Trademark Office, Major Intellectual LLC is the purported owner of a registered mark for CARBONE RESTAURANT (Reg. No. 4407786).

67.     Based on publicly available records at the U.S. Trademark Office, the application for the CARBONE RESTAURANT mark was filed on January 27, 2012.  That application was filed pursuant to Section 1(b), which is reserved for applications for marks that are not yet in use,

**PLAINTIFF'S ORIGINAL COMPLAINT**

and instead are marks for which the applicant has an "intent to use." The Trademark/Service Mark Application, Principal Register for CARBONE RESTAURANT is displayed in the images below:

| Input Field | Entered |
| --- | --- |
| **SERIAL NUMBER** | 85527597 |
| **MARK INFORMATION** | |
| *MARK | CARBONE RESTAURANT |

| GOODS AND/OR SERVICES AND BASIS INFORMATION | |
| --- | --- |
| **INTERNATIONAL CLASS** | 043 |
| *IDENTIFICATION | restaurant services; bar services |
| **FILING BASIS** | SECTION 1(b) |

(**Exhibit 9**).

68.     Based on publicly available records at the U.S. Trademark Office, the application for the CARBONE RESTAURANT lists the goods and services associated with the mark as "restaurant services; bar services" in International Class 43.

69.     Based on publicly available records at the U.S. Trademark Office, a Trademark/Service Mark Statement of Use was filed on July 10, 2013, which stated that the first use in commerce of the CARBONE RESTAURANT mark was "at least as early as 03/09/2013."

| GOODS AND/OR SERVICES SECTION | |
| --- | --- |
| **INTERNATIONAL CLASS** | 043 |
| **CURRENT IDENTIFICATION** | restaurant services; bar services |
| **GOODS OR SERVICES** | KEEP ALL LISTED |
| **FIRST USE ANYWHERE DATE** | 03/09/2013 |
| **FIRST USE IN COMMERCE DATE** | 03/09/2013 |

(**Exhibit 10a**).

The Statement of Use was supported by the sworn declaration of Jeff Zalaznick, who is a Managing Partner of Major Food Group LLC, along with Mario Carbone.

**DECLARATION**

The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. 1001, and that such willful false statements may jeopardize the validity of the application or any resulting registration, declares that he is properly authorized to execute this Statement of Use on behalf of Applicant; he believes the Applicant to be the owner of the Mark sought to be registered, or, if the application is being filed under 15 U.S.C. 1051(b), he believes the Applicant to be entitled to use such Mark in commerce; to the best of his knowledge and belief no other person, firm, corporation, or association, has the right to use the above-identified Mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used in connection with the services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his own knowledge are true and all statements made on information and belief are believed to be true.

Dated: 7/9 , 2013

MAJOR INTELLECTUAL LLC

By: Jeff Zalaznick, Managing Member

(**Exhibit 10b**).

70.     On information and belief, Defendants were aware at the time that they applied for the CARBONE RESTAURANT mark that a mark that is primarily a surname is not registerable as a trademark.  Specifically, based on publicly available records at the U.S. Trademark Office, on March 16, 2009, Mario Carbone executed a sworn declaration in support of a U.S. Trademark Application for the mark TORRISI, for use in conjunction with restaurant services.[1]  In response to that application, on June 15, 2009, the trademark examiner rejected that application on that grounds that the applied-for mark was a surname.

**PRIMARILY MERELY A SURNAME – Refusal**
Registration is refused because the applied-for mark is primarily merely a surname.  Trademark Act Section 2(e)(4), 15 U.S.C. §1052(e)(4); *see* TMEP §1211.  The primary significance of the mark to the purchasing public determines whether a term is primarily merely a surname.  *In re Etablissements Darty et Fils*, 759 F.2d 15, 17-18, 225 USPQ 652, 653 (Fed. Cir. 1985); *In re Kahan & Weisz Jewelry Mfg. Corp.*, 508 F.2d 831, 832, 184 USPQ 421, 422 (C.C.P.A. 1975); *see* TMEP §§1211, 1211.01.

_____
[1] By way of reminder, Mario Carbone, Rich Torrisi, and Jeff Zalaznick are the founders and Managing Partners of Major Food Group.

**Name**
The applicant must state whether anyone connected with it has the surname "Torrisi."   *See* 37 C.F.R. §2.61(b); TMEP §814.

**(Exhibit 11a)**

71.     Despite efforts to overcome that rejection, the examiner maintained the refusal and made it final on January 21, 2010, even going so far as to point out that "an additional factor that contributes to the primary significance of TORRISI being that of a surname is that one of the applicant's principals has the surname TORRISI."

**SECTION 2(e)(4) REFUSAL – PRIMARILY MERELY A SURNAME -- Final**

On 15 June 2009, registration of TORRISI was refused because the examining attorney determined that the applied-for mark is primarily merely a surname.  Trademark Act Section 2(e)(4), 15 U.S.C. §1052(e)(4); *see* TMEP §1211.  The primary significance of the mark to the purchasing public determines whether a term is primarily merely a surname.  *In re Etablissements Darty et Fils*, 759 F.2d 15, 17-18, 225 USPQ 652, 653 (Fed. Cir. 1985); *In re Kahan & Weisz Jewelry Mfg. Corp.*, 508 F.2d 831, 832, 184 USPQ 421, 422 (C.C.P.A. 1975); *see* TMEP §§1211, 1211.01.

The examining attorney has considered the applicant's arguments carefully, however she remains unpersuaded.   Consequently, the refusal under Section 2(e)(4) is repeated and is hereby made FINAL.

And finally, an additional factor that contributes to the primary significance of TORRISI being that of a surname is that one of the applicant's principals has the surname TORRISI, per the applicant's response of 9 December 2009.

For the foregoing reasons, the refusal under Section 2(e)(4) is repeated and is hereby made FINAL.

**(Exhibit 11b)**

72.     Thereafter, on February 8, 2010, Mario Carbone again submitted a declaration in support of a request to register the mark on the supplemental register—a direct result of the examiner's refusal to register a mark that was a surname.  Accordingly, on information and belief, as of no later than February 2010, Mario Carbone was fully aware that a U.S. Trademark application for his surname would be rejected by the trademark office.

**ADDITIONAL STATEMENTS**
**Supplemental Register**
The applicant seeks registration of the mark on the Supplemental Register (i.e., a change of the words 'Principal Register' to 'Supplemental Register').  NOTE: The applicant has separately filed an Allegation of Use, to change the basis of this application from Section 1(b), intent-to-use, to Section 1(a), use in commerce.

**(Exhibit 12)**

**Declaration**

Applicant requests registration of the above-identified trademark/service mark in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq., as amended). Applicant is the owner of the mark sought to be registered, and is using the mark in commerce on or in connection with the goods/services identified above, as evidenced by the attached specimen(s) showing the mark as used in commerce.

The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements may jeopardize the validity of the form or any resulting registration, declares that he/she is properly authorized to execute this form on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the form is being filed under 15 U.S.C. Section 1126(d) or (e), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.

Signature: /Mario Carbone/   Date Signed: 02/08/2010
Signatory's Name: Mario Carbone
Signatory's Position: Partner

(**Exhibit 13**)

73.     Despite this, based on publicly available records at the U.S. Trademark Office, at no time did the application for CARBONE RESTAURANT disclose that the word "CARBONE" is the surname of Mario Carbone.  Instead, the application asserts that CARBONE is the Italian word for "carbon."

ENGLISH TRANSLATION

The following translation statement is added to the record:

    The English translation of CARBONE in the mark is "CARBON."

*See* 37 C.F.R. §§2.32(a)(9), 2.61(b); TMEP §§809, 809.03.

(**Exhibit 14**)

74.     Since Carbone MFG's Application, Mario Carbone has boasted about the success and recognition that his surname as acquired. A Haute Living article, titled "Mario Carbone Expanding His Culinary Empire One City at a Time" provides from Mario Carbone as follows:

        "It's exciting and incredibly humbling to know that ***the family name*** and sauce is now on supermarket shelves — and at some point soon, nationwide

— it's a crazy thing," Carbone says as his expression shifts to nostalgic happiness, as if he's back in the kitchen with his grandfather. "Similar to the first time I saw the Carbone name on an awning — and I was like, '***Whoa, that's my last name***' — the idea of me in Stop & Shops is equally strange but amazing," he says. "I think the idea that we can bring a little bit of the restaurant across the country is the coolest."

(**Exhibit 15**) (emphasis added)

75.    Based on publicly available records at the U.S. Trademark Office, the U.S. Trademark Office registered the CARBONE RESTAURANT mark on September 24, 2013.

76.    Based on publicly available records at the U.S. Trademark Office, Major Intellectual LLC is the purported owner of a pending trademark application for CARBONE (Ser. No. 90092600).

77.    Based on publicly available records at the U.S. Trademark Office, the application for the CARBONE mark was filed on August 4, 2020.  That application was filed pursuant to Section 1(b), which is reserved for applications for marks that are not yet in use, and instead are marks for which the applicant has an "intent to use."

78.    Based on publicly available records at the U.S. Trademark Office, the application for the CARBONE mark lists the goods and services associated with the mark as "sauces; pasta sauces; pizza sauce; ready-made sauces; tomato-based sauces; seafood sauce; lemon sauce; chicken sauce; wine vinegar; vinegar; vinaigrettes; balsamic vinegar; marinades; seasonings; spices; pasta; dry pasta; refrigerated pasta; sauces for pasta, vegetables, meat, poultry, chicken, shrimp, veal, steak and pork; coffee; salad dressings; refrigerated pre-packaged entrees consisting primarily of pasta; frozen pre-packaged entrees consisting primarily of pasta; bakery products; bakery goods; pastries; cakes; cheesecakes; tiramisu; gelato" in International Class 30.

79.    Based on publicly available records at the U.S. Trademark Office, to date, no Statement of Use has been filed in relation to the CARBONE mark.

80.     Based on publicly available records at the U.S. Trademark Office, on November 24, 2020, the trademark examiner issued a Nonfinal Office Action wherein the examiner stated required Major Intellectual LLC to explain the wording "Carbone" in the mark had any significance as applied to the goods and/or services.

**Significance of the Wording**

To permit proper examination of the application, applicant must explain whether the wording "Carbone" in the mark has any significance in the applicant's trade or industry or as applied to applicant's goods and/or services, or if such wording is a "term of art" within applicant's industry. *See* 37 C.F.R. §2.61(b); TMEP §814. Failure to comply with a request for information is grounds for refusing registration. *In re Harley*, 119 USPQ2d 1755, 1757-58 (TTAB 2016); TMEP §814.

**(Exhibit 16)**

81.     In response, Major Intellectual LLC did not disclose that Carbone is the surname of Mario Carbone, and instead, stated only that Carbone is the Italian word for carbon.  This truthfulness of this statement was sworn to by Major Intellectual LLC's attorney.

**ADDITIONAL STATEMENTS**
**Translation**
The English translation of CARBONE in the mark is carbon.

**(Exhibit 17)**

82.     Based on publicly available records at the U.S. Trademark Office, on May 26, 2021, the trademark examiner issued another Nonfinal Office Action which rejected the application on the grounds that the CARBONE mark is primarily a surname.

**Section 2(e)(4) Refusal**

Registration is refused because the applied-for mark is primarily merely a surname.  Trademark Act Section 2(e)(4), 15 U.S.C. §1052(e)(4); *see* TMEP §1211.

**(Exhibit 18)**

83.    In response, Major Intellectual LLC again failed to disclose that CARBONE is the surname of Mario Carbone, and instead, asserted that "CARBONE appearing in the mark means or signifies or is a term of art for carbon and 'coal-fired' or cooked with charcoal."

**ADDITIONAL STATEMENTS**
**Significance of wording, letter(s), or numeral(s)**
CARBONE appearing in the mark means or signifies or is a term of art for carbon and "coal-fired" or cooked with charcoal. in the relevant trade or industry or as used in connection with the goods/services/collective membership organization listed in the application.

**(Exhibit 19)**

84.    Based on publicly available records at the U.S. Trademark Office, on December 9, 2021, the trademark examiner issued another Nonfinal Office Action that rejected the application again on the grounds that Carbone is the surname of one of the creators.  To date, Major Intellectual LLC has not responded to this office action.

**Section 2(e)(4) Refusal**

The applicant's arguments are unpersuasive, and the refusal is continued.  The attached evidence informs that Carbone is the surname of one of the creators.  A term that is the surname of an individual applicant or that of an officer, founder, owner, or principal of applicant's business is probative evidence of the term's surname significance.  TMEP §1211.02(b)(iv); *see, e.g., In re Etablissements Darty et Fils*, 759 F.2d 15, 16, 225 USPQ 652, 653 (Fed. Cir. 1985) (holding DARTY primarily merely a surname where "Darty" was the surname of applicant's corporate president); *In re Eximius Coffee, LLC*, 120 USPQ2d 1276, 1278-80 (TTAB 2016) (holding ALDECOA primarily merely a surname where ALDECOA was the surname of the founder and individuals continuously involved in the business); *In re Integrated Embedded*, 120 USPQ2d 1504, 1507 (TTAB 2016) (holding BARR GROUP primarily merely a surname where BARR was the surname of the co-founder and applicant's corporate officer and GROUP was found "incapable of lending source-identifying significance to the mark"); *Miller v. Miller*, 105 USPQ2d 1615, 1620, 1622-23 (TTAB 2013) (holding MILLER LAW GROUP primarily merely a surname where "Miller" was the surname of the applicant and the term "law group" was found generic).

**(Exhibit 20)**

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
### (Section 43 (a) of the Lanham Act, 15 U.S.C. § 1125)

85.    Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully stated herein.

86.    Defendant's improper use of, and sale of products under, a mark confusingly similar to Plaintiff's Mark is confusing to consumers and constitutes infringement of Plaintiff's trademark rights in violation of the Lanham Trademark Act (Lanham Act).   Defendant's

unauthorized use of the Mark violates Section 43 of the Lanham Act which prohibits the use of a trademark in such a manner as is likely to cause confusion as to the source of the goods bearing the trademark. *See* 15 U.S.C. § 1125.

87. Defendant intends to sell its products under the Mark and will continue to do so unless enjoined from doing so by this Court. Plaintiff has no adequate remedy at law for Defendant's infringement of Plaintiff's Mark, in that: (i) the Mark is unique and valuable property, injury to which cannot adequately be compensated by monetary damages; (ii) the injuries to Plaintiff resulting from the infringement are not precisely and fully ascertainable; (iii) the infringement injures and threatens to continue to injure Plaintiff's reputation and goodwill; and (iv) the injury resulting to Plaintiff from Defendant's unlawful acts complained of herein are continuing, and they will cause irreparable injury to Plaintiff and to the public. Further, the balance of hardships weighs in Plaintiff's favor as Defendant is the infringing party, Defendant chose to proceed with its infringing mark after receiving a cease-and-desist letter, and Defendant's costs would be minimal since it can continue operating its restaurant under one of its different, non-infringing names. Further, the public interest is served by enjoining the improper use of trademarks and making such use unprofitable. Accordingly, Plaintiff is entitled to an order from this court preliminarily and permanently enjoining Defendant and its principals, agents, employees and others acting in concert with them, from directly or indirectly infringing the Plaintiff Mark in any manner, including by using the name or the Mark or any other name, mark, design or logo that is confusingly similar to the Mark in connection with the sale, offer for sale, advertising, or promotion of any goods or services in the Texas area. Additionally, or in the alternative, Plaintiff seeks an accounting of its actual and consequential damages resulting from Defendant's infringing

acts.   Moreover, as a result of Defendant's egregious infringement, Plaintiff seeks treble, additional, and enhanced damages from Defendant.

## COUNT II
## TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
## TEXAS COMMON LAW

88.     Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully stated herein.

89.     Defendant's improper acts complained of herein constitute trademark infringement and unfair competition under the common law of the State of Texas.   As a result of Defendant's infringement and unfair competition, Plaintiff has suffered and will continue to suffer injury and damage in an amount yet to be determined.   Upon information and belief, Defendant's unlawful acts of infringement and unfair competition have resulted in profits and unjust enrichment to Defendant in an amount yet to be determined.   Defendant's acts of trademark infringement and unfair competition are causing harm to Plaintiff.

90.     The injury resulting to Plaintiff from Defendant's unlawful acts complained of herein are continuing and they will cause irreparable injury to Plaintiff and to the public. Unless Defendant's unlawful acts are enjoined by this Court, they will continue to cause irreparable injury to Plaintiff and to the public, for which there is no adequate remedy at law.   Accordingly, Plaintiff is entitled to an order from this court preliminarily and permanently enjoining Defendant and its principals, agents, employees and others acting in concert with them, from directly or indirectly infringing the Plaintiff marks in any manner, including by using the Mark or any other name, mark, design or logo that is confusingly similar to the Mark in connection with the sale, offer for sale, advertising, or promotion of any goods or services.

**PLAINTIFF'S ORIGINAL COMPLAINT**

91.     Additionally, or in the alternative, Plaintiff seeks an accounting of its actual and consequential damages resulting from Defendant's infringing acts.  Moreover, as a result of Defendant's egregious infringement, Plaintiff seeks treble, additional, and enhanced damages from Defendant.

<u>**COUNT III**</u>
**TRADEMARK DILUTION**
**TEXAS LAW**
**(Texas Anti-Dilution Act, Tex. Bus. & Com. Code § 16.29)**

92.     Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully stated herein.

93.     Defendant's unlawful acts as described above demonstrate that Defendant is diluting the exclusivity and distinctiveness of Plaintiff's Mark in violation of the Texas Anti-Dilution Act, Tex. Bus. & Com. Code § 16.29.

94.     As a result of Defendant's dilution of Plaintiff's distinctive trademark, Plaintiff has suffered, and is suffering, injury and damage to which there is no adequate remedy at law. Plaintiff therefore seeks preliminary and permanent injunctive relief to prevent this type of injury from continuing.  Additionally, or in the alternative, Plaintiff seeks an accounting and damages.

**PLAINTIFF'S ORIGINAL COMPLAINT**

## **CONCLUSION AND PRAYER**

1.      WHEREFORE, Plaintiff prays for entry of judgment:

(a)      finding that Defendant has infringed Plaintiff's common law trademark rights in the Mark;

(b)      finding that Defendant has diluted the goodwill associated with Plaintiff's mark

(c)      finding that Defendant has engaged in unfair competition in violation of both federal and Texas law;

(d)      enjoining Defendant, its officers, directors, agents, employees, representatives, successors, assigns, if any, and those in privity or concert with them from further acts that would amount to infringement of Plaintiff's common law trademark rights in the Mark, dilution of Plaintiff's goodwill associated with Plaintiff's Mark, or unfair competition;

(e)      awarding Plaintiff all damages caused by the acts of Defendant and all profits of Defendant from acts complained of, and/or all costs to Plaintiff caused by Defendant's activities complained of herein;

(f)      trebling the damages and profits awarded to Plaintiff as authorized by 15 U.S.C. § 1117;

(g)      granting Plaintiff pre-judgment and post-judgment interest on the damages caused to Plaintiff by reason of Defendant's activities complained of herein;

(h)      finding that this is an exceptional case and awarding Plaintiff its reasonable and necessary attorneys' fees in accordance with 15 U.S.C. § 1117;

(i)      awarding costs to Plaintiff; and

(j)      awarding Plaintiff such other and further relief, at law or in equity, as the Court may deem just and proper.

**PLAINTIFF'S ORIGINAL COMPLAINT**

Respectfully submitted,

**MICHELMAN & ROBINSON, LLP**

Dated: June 1, 2022

By: */s/ Matthew E. Yarbrough*
    Matthew E. Yarbrough
    Texas Bar No. 00789741
    myarbrough@mrllp.com
    Jason A. Blackstone
    Texas Bar No. 24036227
    jblackstone@mrllp.com
    100 Crescent Ct., Suite 700
    Dallas, TX 75201
    Telephone: (214) 263-7500

    *Attorneys for Plaintiff*
    Carbone's Fine Foods and Wines LLC

**PLAINTIFF'S ORIGINAL COMPLAINT**