IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CARBONE'S FINE FOODS AND WINES LLC, | § § § | |
| Plaintiff, | § § | Case No. 3:22-cv-01184-E |
| v. | § § | |
| CARBONE RESTAURANT LLC, CARBONE FINE FOOD LLC, THE MAJOR FOOD GROUP LLC, and MAJOR INTELLECTUAL LLC | § § § § | |
| Defendants et. al. | § § § | |

---

**PLAINTIFF CARBONE'S FINE FOODS AND WINES LLC'S
MOTION FOR A PRELIMINARY INJUNCTION**

---

# TABLE OF CONTENTS

Page(s)

I.     INTRODUCTION. ................................................................................................ 1

II.    FACTS AND EVIDENCE OF TRADEMARK INFRINGEMENT. ................................ 2

       A.     CARBONE'S Mark Has Served as A Source Indicator Since 2011. ................. 2

       B.     Carbone-MFG is An Infringing Newcomer to Dallas. ................................. 6

       C.     Confusion is Rampant between Carbone's and Carbone-MFG. .......................... 7

III.   LEGAL STANDARD. .......................................................................................... 8

IV.    ARGUMENT ................................................................................................... 9

       A.     Carbone's Is Substantially Likely to Succeed on the Merits. ...................... 9

              1.   Carbone's Has Prior Protectable Rights in Its Common Law Mark ............... 9

              2.   Carbone MFG's Use of the Mark Has Already Caused Actual Confusion and
                   Is Likely to Continue Causing Confusion In The Future. ......................... 13

                   a)   The Type of Mark Allegedly Infringed. ...................................... 14

                   b)   The Similarity Between The Two Marks. ..................................... 15

                   c)   The Similarity of The Products or Services ................................ 16

                   d)   The Identity of The Retail Outlets and Purchasers ...................... 16

                   e)   The Identity of The Advertising Media Used .............................. 17

                   f)   Defendant's Intent. ............................................................ 18

                   g)   Evidence of Actual Confusion .............................................. 20

                   h)   The Degree of Care Exercised by Potential Purchasers. .............. 20

       B.     Carbone's Will Suffer Irreparable Harm if Carbone-MFG is Not Enjoined. ....... 21

       C.     The Balance of Hardships Favors an Injunction. ...................................... 23

       D.     The Public Interest Would Be Best Served by the Issuance of an Injunction. ..... 24

V.     CONCLUSION. ................................................................................................ 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*7-Eleven Inc. v. Puerto Rico-7 Inc.*,
  No. 3:08-CV-0140B, 2009 WL 4723199 (N.D. Tex. Dec. 9, 2009) .................................22, 23

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
  237 F.3d 198 (3d Cir. 2000)........................................................................................................15

*Abraham v. Alpha Chi Omega*,
  708 F.3d 614 (5th Cir. 2013) .....................................................................................................21

*Am. Rice, Inc. v. Producers Rice Mill, Inc.*,
  518 F.3d 321 (5th Cir. 2008) ...............................................................................13, 14, 15, 19

*Amstar Corp. v. Domino's Pizza, Inc.*,
  615 F.2d 252 (5th Cir.1980) ......................................................................................................14

*Armco, Inc. v. Armco Burglar Alarm Co.*,
  693 F.2d 1155 (5th Cir.1982) ....................................................................................................14

*Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack
  Apparel Co.*,
  550 F.3d 465 (5th Cir. 2008) .....................................................................................................20

*Bisous Bisous LLC v. The Cle Grp., LLC*,
  3:21-CV-1614-B, 2021 WL 3618042 (N.D. Tex. Aug. 16, 2021) ...................................15, 16

*Blue Bell, Inc. v. Farah Mfg. Co.*,
  508 F.2d 1260 (5th Cir. 1975) ...................................................................................................11

*Brainstorm CC, LLC v. Doe 1*,
  No. 4:20-CV-554, 2020 WL 8267578 (E.D. Tex. July 21, 2020) ...............................................9

*Brandtjen & Kluge, Inc. v. Prudhomme*,
  765 F. Supp. 1551 .....................................................................................................................14

*Crenshaw Media Grp. LLC v. Davis*,
  2018 WL 3496473 (N.D. Tex. July 20, 2018) ..........................................................................24

*Dallas Cowboys Football Club, Ltd. v. Am.
  's Team Properties, Inc.*, 616 F. Supp. 2d 622, 633 (N.D. Tex. 2009) ........................10, 11, 12

*Diarama Trading Co. v. J. Walter Thompson U.S.A., Inc.*,
    No. 01CIV.2950(DAB)(DCF), 2005 WL 2148925 (S.D.N.Y. Sept. 6, 2005),
    *aff'd sub nom. Diarama Trading Co. v. Thompson*, 194 F. App'x 81 (2d Cir.
    2006) .......................................................................................................................10

*Elvis Presley Enters., Inc. v. Capece*,
    141 F.3d 188 (5th Cir. 1988) ................................................13, 14, 15, 18, 20, 24

*Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*,
    628 F.2d 500 (5th Cir. 1980) .........................................................................16, 17

*Fletcher's Original State Fair Corny Dogs, LLC v. Fletcher-Warner Holdings*,
    LLC, 434 F. Supp. 3d 473 (E.D. Tex. 2020) ...................................9, 14, 15, 17, 18, 20, 23, 24

Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha754 F.2d at 597
    (5th Cir.1985)............................................................................................................19

*Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*,
    982 F.3d 280 (5th Cir. 2020) ......................................................................................15

*Houston Cigar All. V. Off. Houston Cigar Wk. LLC*,
    2021 WL 1416875 (S.D. Tex. Apr. 14, 2021) ...........................................................21

*Innovation Ventures, LLC v. N2G Distrib., Inc.*,
    763 F.3d 524 (6th Cir. 2014) ....................................................................................16

*Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*,
    188 F.3d 427 (7th Cir. 1999) ....................................................................................10

*Mary Kay Inc. v. Anderson*,
    2018 WL 2230623 (N.D. Tex. May 16, 2018) ............................................................9

*Mushroom Makers, Inc. v. R. G. Barry Corp.*,
    580 F.2d 44 (2d Cir. 1978)........................................................................................16

*Paulsson Geophysical Servs., Inc. v. Sigmar*,
    529 F.3d 303 (5th Cir. 2008) ...........................................................................9, 22, 24

*RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*,
    655 F. Supp. 2d 679 (S.D. Tex. 2009) .....................................................................20

*Robin Singh Educ. Servs. Inc. v. Excel Test Prep Inc.*,
    274 F. App'x 399 (5th Cir. 2008)..............................................................................12

*Rolex Watch U.S.A., Inc. v. BeckerTime, LLC*,
    No. 4:20-CV-01060, 2022 WL 286184 (N.D. Tex. Jan. 31, 2022) ..........................14

*Roto-Rooter Corp. v. Garcia,*
No. 4:20-CV-00497, 2021 WL 327569 (E.D. Tex. Feb. 1, 2021).........................................22

*Savage Tavern, Inc. v. Signature Stag, LLC,*
No. 5:21-CV-078-H, 2022 WL 686870 (N.D. Tex. Mar. 8, 2022).............................15, 20, 21

*Scott Fetzer Co. v. House of Vacuums Inc.,*
381 F.3d 477 (5th Cir. 2004) ...............................................................................................20

*Scrum All., Inc. v. Scrum, Inc.,*
No. 4:20-CV-00227, 2020 WL 4016110 (E.D. Tex. July 16, 2020) ................................17, 24

*Sheila's Shine Prod., Inc. v. Sheila Shine, Inc.,*
486 F.2d 114 (5th Cir. 1973) ...............................................................................................12

*Sun Banks of Florida, Inc. v. Sun Fed. Sav. & Loan Ass'n,*
651 F.2d 311 (5th Cir.1981) ................................................................................................14

*Suzie's Brewery Co. v. Anheuser-Busch Companies, LLC,*
519 F. Supp. 3d 839 (D. Or. 2021) ......................................................................................21

*T.A.B. Systems v. Pactel Teletrac,*
77 F.3d 1372 (Fed.Cir.1996)................................................................................................10

*TGI Friday's Inc. v. Great Nw. Restaurants, Inc.,*
652 F. Supp. 2d 763 (N.D. Tex. 2009) .................................................................................22

*Union Nat. Bank Tex., Laredo, Tex. v. Union Nat. Bank Tex., Austin, Tex.,*
909 F.2d 839 (5th Cir. 1990) ..........................................................................................11, 14

*Wilson v. Tessmer L. Firm, PLLC,*
483 F. Supp. 3d 416 (W.D. Tex. 2020), reconsideration denied, No. 5:18-CV-
1056-DAE, 2021 WL 7448751 (W.D. Tex. Mar. 4, 2021)......................................................9

*World Carpets, Inc. v. Dick Littrell's New World Carpets,*
438 F.2d 482 (5th Cir. 1971) ...............................................................................................13

**Other State Cases**

*King Aerospace, Inc. v. King,*
No. 05-19-00245-CV, 2020 WL 2079177 (Tex. App. Apr. 30, 2020).......................................9

**Federal Statutes**

Lanham Act........................................................................................................................25

15 U.S.C.A.§ 1127................................................................................................................11

15 U.S.C. §1051(b). (App'x, p. 000246 at ¶ 4, p. 000251) ...................................................6

iv

15 U.S.C. § 1116(a) ...........................................................................................................21, 22

Lanham Act P. 65 and Section 43(a), 15 U.S.C. § 1125(a) .......................................................1, 21

## I.     INTRODUCTION.

Pursuant to Fed. R. Civ. P. 65 and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiff Carbone's Fine Food and Wine ("Carbone's" or "Plaintiff") moves for a Preliminary Injunction prohibiting Defendants Major Food Group LLC, Major Intellectual LLC, and Carbone Restaurant LLC ("Defendant" or "Carbone-MFG"  or collectively, "Defendants") from using the term "Carbone" in association with 1) restaurant and bar services, and 2) food goods, including advertising for the same, in Dallas, Texas.[1]

For over a decade, Carbone's has continuously been known as an institution offering fine Italian food and wine in the Dallas area. Starting in early 2011, Julian Barsotti, owner and chef at Carbone's, began consistently and continuously using the common law trademark CARBONE'S, (the "Mark" or "CARBONE'S Mark"), to identify 1) its restaurant and bar services, and 2) its goods (i.e., pre-packaged foods) to the public.  Accordingly, although Carbone's officially opened to the public on April 17, 2012, public recognition of the CARBONE'S Mark as a source of restaurant and bar services significantly predates that official opening by nearly a year. (Appendix to Motion for Preliminary Injunction ("App'x"), p. 000001-002 ¶¶ 3-4). Carbone's has received outstanding critical reviews, accolades, and awards for its excellent restaurant services and prepackaged foods. Further, Plaintiff has sold tens of millions of dollars in goods under the CARBONE'S Mark since its opening in April 2012. (App'x, p. 000029 at ¶ 15).

Carbone's goodwill and reputation has now been threatened by New York-based restaurant and food provider, Carbone MFG, which is not only serving the same type of cuisine as Carbone's (Italian) but is also located in Dallas on the same street, Oak Lawn Avenue, on the same side of

---

[1]  The injunctive relief sought by this Motion contemplates a prohibition on any use of the term "CARBONE" as a source indicator in relation to the described goods and services.  Non-exclusive exemplars of such uses are described in greater detail in the concurrently filed [Proposed] Order.

Oak Lawn, a mere 2.3 miles from Carbone's. (App'x, p. 000006 at ¶ 13, p. 000018). By using a virtually identical mark—Carbone's v Carbone—in association with the same goods and services—Italian restaurant and bar services and pre-packaged foods—consumers have been and will continue to be confused, misled, or deceived as to the source of the goods and services. As detailed in Carbone's Complaint, there are *thousands* of instances of actual consumers, vendors, and even the City of Dallas itself, being confused by Defendant's use of "Carbone."  Unfortunately, Defendants have done nothing to attempt to mitigate this confusion, and instead have willfully infringed on the CARBONE'S Mark by opening their competing restaurant. Accordingly, and as a result of Defendant's activities and the ongoing harm to Plaintiff's goodwill, reputation, and customer base, Plaintiff has been and will continue to be irreparably damaged by such acts in the future unless Defendant is preliminarily and permanently enjoined by this Court.

Simply put, preliminary injunctive relief is needed to prevent further irreparable harm to Carbone's in the form of, at least, reputational harm and loss of goodwill. As detailed below, all digits and factors of confusion weigh in favor of finding a likelihood of confusion, and Carbone's is likely to succeed on its claims for trademark infringement. Further, Carbone's has been and will continue to be irreparably harmed, the balance of hardships favors an injunction, and the public interest would be served by an injunction. As such, Carbone's respectfully requests that the Court grant immediate injunctive relief to enjoin Carbone-MFG from using the term "Carbone" in association with restaurant and bar services and food and/or beverage products, including advertising for the same, in Texas.

## II.     FACTS AND EVIDENCE OF TRADEMARK INFRINGEMENT.

### A.     CARBONE'S Mark Has Served as A Source Indicator Since 2011.

In 2011, chef Julian Barsotti started his second Italian restaurant, Carbone's Fine Foods and Wine, also referred to and marketed as Carbone's in Dallas, Texas, off of Oak Lawn Avenue.

(App'x, p. 000001-002 at ¶ 3). Since its opening, a set of black and white photos have hung on the wall that document the history of the CARBONE'S Mark: Carbone's Fine Foods & Liquors was a long-standing restaurant that existed originally in New York City then in New Jersey from 1941 to 1994 that was founded and operated by Mr. Barsotti's grandfather, Angelo Carbone. (App'x, p. 000002-003 at ¶ 6, p. 000010).  Also since its opening, Plaintiff has been in the business of providing quality Italian food by full-service restaurant and bar dining, to-go food and wine sales, and pre-packaged sauces and foods. (App'x, p. 000002 at ¶ 5). The goods sold by Plaintiff under the CARBONE'S Mark include: sauces, pasta sauces, gravy, antipasti products, dry goods, pastas, seafood, sandwiches, salads, honeys and jams, olive oils and vinegars, salt products, and sweets. (App'x, p. 000027-028 at ¶ 7, p. 000114). Plaintiff first began using the CARBONE'S Mark to identify its restaurant and bar services in early 2011 and has consistently and continuously used the CARBONE'S Mark to indicate the source of its restaurant and bar services since 2011. Indeed, Mr. Barsotti used the Carbone's name in commerce via the process of getting the requisite permits and funding necessary to open a restaurant and filing for Carbone's Fine Food & Wine with the Texas Secretary of State. (App'x, p. 000001-002 at ¶ 3; App'x, p. 000023-024 at ¶ 3, p. 000037-079). Additionally, Carbone's spent several hundreds of thousands of dollars in 2011 related to the CARBONE'S Mark, including funds spent on the signing of the lease for the 4208 Oak Lawn Avenue location, the inclusion of the CARBONE'S Mark in investment materials presented to restaurant investors, the application for and acquisition of a liquor license, advertising Carbone's Italian Food in connection with the CARBONE'S Mark, and the placement of the Carbone's sign on the exterior of the building. (App'x, p. 000023 at ¶ 4, p. 000080-085). The results of these efforts have served to identify Plaintiff's services and products to consumers ever since. (*Id*.).

In addition to the foregoing, beginning in 2011, Plaintiff extensively promoted the

CARBONE'S Mark online, in person, and via media interviews and articles to publicize the offering of restaurant services and sales of pre-packaged food--before Carbone's officially opened to the public on April 17, 2012. (App'x, p. 000026-027 at ¶ 5, p. 000086). Indeed, the CARBONE'S Mark was used to market and advertise its restaurant and bar services, and pre-packaged food goods in numerous articles between January, 2011 and January, 2012:

- In January 2011: "Lucky for Dallas, then, it doesn't look like we'll lose Barsotti to Italy, or anywhere else for that matter, **as his plans include expanding his foothold right here.** "I definitely have a desire to do a few more things but definitely within the context of Italian food. I want to open an Italian grocery store with sandwiches and wine and sausages that we make. I'm gonna do it. I have an idea and a vision that that I'm really going to realize."

- In August 2011: "Nonna's Julian Barsotti will open Carbone's Fine Food and Wine early next year. It will be an "Italian-American grocery" with a lunch counter and Sunday dinners."

- In August 2011: "Julian Barsotti, the immensely talented chef behind the acclaimed Italian restaurant Nonna, **will open Carbone's Fine Food and Wine early next year** at the northeast corner of Wycliff and Oak Lawn Avenue, in Dallas."

- In October 2011: "Carbone's Fine Food & Wine has leased 3,300 square feet of retail space in The Shops of Highland Park at the northeast corner of Wycliff and Oak Lawn Avenue in Dallas."

- In October 2011: "When Carbone's Fine Food & Wine opens in February, Julian Barsotti hopes to add another element to Dallas food culture" and noted that Mr. Barsotti said "[t]he specialty market and lunch counter is something he has been thinking about for more than three years."

- In December 2011: "Carbone's Fine Food and Wine. Construction on Julian (Nonna) Basotti's **much anticipated deli, grocery store, and mini-restaurant on December 2.** It's going into the space formerly known as Talbot's on Wycliff and Oak Lawn. Barsotti says he anticipates opening in March 2012. The store's logo was inspired by the sign of his family's restaurant on the East Coast. It opened in Manhattan before moving to Harrison, New Jersey. It was open for 75 years and closed in 1993."

- In January 2012: ""Eats Blog dishes on a new deli from the folks behind Nonna. I'm thinking they're going to give Jimmy's a run for their money, but I wonder if most of Dallas will prefer the upscale offerings of Carbone's Fine Food and Wine to Jimmy's casual grocery."

(App'x, p. 000026-027 at ¶ 5, p. 000086). Further, as explained by Mr. Barsotti, "throughout 2011, Mr. Neitzel and I actively and routinely spoke with customers at Nonna, another restaurant

that [Mr. Barsotti] own[s] and operate[s] in Dallas, Texas, to tell them of the plans to open Carbone's." (App'x, p. 000001-002 at ¶ 3).  They further "spoke to staff and potential investors to tell them about Carbone's" and "spoke to dozens of individuals from major media outlets so [Mr. Barsotti] could spread the word about Carbone's, including Leslie Brenner of the Dallas Morning News and Nancy Nichols of D Magazine."  (*Id*.) As a result, the "opening of Carbone's became highly anticipated in Dallas, Texas." (*Id*.).

Since opening, Carbone's has received outstanding consistent critical reviews which serve as marketing to potential consumers to Carbone's. A search for Carbone's on both the Dallas Morning News and the Dallas Observer includes dozens of mentions, whereas the Dallas Observer has well over 100 mentions or articles about Carbone's—all of which cement the CARBONE'S Mark as being the source of excellent restaurant and bar services and prepackaged foods. (App'x, p. 000028-029 at ¶ 12). Beyond this, Carbone's independently received substantial media attention and awards for its high-quality Italian food, including, for example, 4 stars from the Dallas Morning News and numerous accolades and favorable reviews from Texas Monthly, D Magazine, the Dallas Observer, among various others. (App'x, p. 000028-029 at ¶¶ 8—12, p. 000116-0149).

Since its inception, Plaintiff's use of the CARBONE'S Mark in relation to restaurant services and pre-packaged food is unique in the Texas market, and Carbone's has become a ubiquitous member of the Dallas and Texas restaurant scene. Carbone's has sold tens of millions in goods under the CARBONE'S Mark since 2012. (App'x, p. 000029 at ¶ 15). The annual net sales of Carbone's pre-packaged food have been above $100,000 each year from 2012 through 2021. (*Id*.). Carbone's annual restaurant revenue (i.e., revenue from restaurant and bar services) was just below $1,000,000 in 2012 but has exceeded $1,000,000 every year since. (*Id*.). Customers and potential customers identify the CARBONE'S Mark as indicating high-quality restaurant

services and pre-packaged food that originates with Plaintiff and its Executive Chef, Mr. Barsotti. As such, Plaintiff has developed substantial recognition among the consuming public for its well-known products sold under the Mark and enjoys extensive goodwill associated with its Mark.

### B.      Carbone-MFG is An Infringing Newcomer to Dallas.

In December 2021, Plaintiff became aware that the Defendants were considering opening the Carbone-MFG restaurant in Dallas.  By way of background, Major Food Group LLC operates "Carbone," an Italian-American restaurant in New York that, on information and belief, first opened around March 2013. Mario Carbone, Rich Torrisi, and Jeff Zalaznick are the founders and Managing Partners of Major Food Group LLC, and Mario Carbone is also the chef of Carbone Restaurant, which is Mario Carbone's namesake restaurant. Since its opening in 2013, Defendants have opened additional restaurants under the CARBONE name, including in Las Vegas. On information and belief, the Carbone-MFG restaurant that is the subject of this lawsuit is intended to be another copy of Defendant's New York Carbone restaurant. Defendants purport to be the owners of a federally registered trademark for "CARBONE RESTAURANT" for "restaurant services; bar services." (App'x, p. 000246 at ¶ 3, p. 000248). Notably, Defendants filed their application for this Mark on January 27, 2012 pursuant to Section 1(b), which is reserved for applications for marks *that are not yet in use*. *Id*.; *see* 15 U.S.C. 1051(b). (App'x, p. 000246 at ¶ 4, p. 000251). Thus, Defendants admitted in a sworn application to the US Trademark Office that they had not yet begun using the CARBONE RESTAURANT mark as of January 2012. Further, Defendants later updated that application, again, in a sworn statement to the US Trademark Office, that they began using the CARBONE RESTAURANT mark "at least as early as 03/09/2013." (App'x, p. 000246 at ¶ 5, p. 000257, 000266). Of course, as set forth above, Carbone's began using the CARBONE'S Mark in 2011—which predates both the alleged first use of the CARBONE RESTAURANT mark in March 2013, and also predates the filing of the Trademark application

6

(wherein Defendants admit that they were not yet using the mark).

In an effort to make Defendants aware of Plaintiff's common law rights, and to prevent irreparable harm to Plaintiff, Carbone's mailed Defendant a cease-and-desist letter in December 2021—several months before Carbone-MFG actually opened. (App'x, p. 000035 at ¶ 31, p. 000227). Unfortunately, Defendants ignored Plaintiff's rights and moved forward anyway, and on April 1, 2022, Defendant opened a restaurant under the name "Carbone" in Dallas. (App'x, p. 000032-033 at ¶ 29). Defendants' new competing Carbone restaurant not only serves the same type of cuisine as Carbone's (Italian), but is also located off the same street in Dallas, Oak Lawn Avenue, on the same side of Oak Lawn, just 2.3 miles from Carbone's. (App'x, p. 000006 at ¶ 13, p. 000017).  In addition, Defendants also opened a second restaurant next door/within the same building under the name "VINO"—which also serves Italian food and wines. (App'x, p. 000032-033 at ¶ 29). In addition to the opening a directly competing restaurant, as of at least March 2, 2022, Defendants began marketing, offering for sale, and selling pre-packaged food in the form of pasta sauce in the Dallas area. (App'x, p. 000004 at ¶ 11, p. 000013).

### C.   Confusion is Rampant between Carbone's and Carbone-MFG.

Even before the actual opening of Carbone-MFG, confusion between Carbone's and Carbone-MFG was already widespread. Mr. Barsotti and Carbone's small staff have already been forced to answer and redirect dozens of phone calls per day from customers asking for the competing Carbone-MFG restaurant. (App'x, p. 000033-035 at ¶ 30, p. 000224). Between March until early July 2022, Carbone's conservatively estimates that it received 1,400 to 1,700 phone calls from consumers looking to contact Carbone-MFG, but mistakenly called Carbone's instead. (App'x, p. 000033-035 at ¶ 30).  Multiple consumers and potential consumers have left mistaken Yelp and TripAdvisor reviews. (App'x, p. 000246 at ¶ 8, p. 000268-079; App'x, p. 000030 at ¶ 19, p. 000171). For example, in a review posted to Yelp, a user stated: "**Went to this place thinking**

7

**it was the new opening of the original Carbone in New York**! . . . . This restaurant has the same name, but has been on Oak Lawn for many years." (emphasis added). (App'x, p. 000246 at ¶ 8, p. 000268). Similarly, another Yelp user mistakenly left a review for Carbone-MFG on Carbone's yelp: "Vino in Dallas lives up to Carbone inVegas[sic] and more." (App'x, p. 000246 at ¶ 8, p. 000274). Of course, as set forth in the section above, Carbone's is not next door to Vino nor does it have a location in Las Vegas—but Carbone-MFG is and does.

Carbone's has further been confused with Carbone by vendors, delivery, persons, and job applicants. (App'x, p. 000033-035 at ¶ 30).  Even the City of Dallas has been confused between Carbone's and the competing Carbone-MFG restaurant. Indeed, the City of Dallas Department of Code Compliance mistakenly sent Carbone-MFG's account invoice for a food establishment permit to Carbone's. (App'x, p. 000006-007 at ¶14, p. 000019).  Yet further, the Dallas Morning News recognized the likelihood of confusion that would arise when the Carbone restaurant opened:

> **Carbone is not to be confused with Carbone's Fine Food & Wine**, an Italian restaurant and grocery on Oak Lawn Avenue in Dallas. Carbone's is operated by Highland Park restaurateur Julian Barsotti, who runs some of Dallas' best Italian restaurants with Nonna, Sprezza and Fachini. (Summers is an investor in these restaurants, too.) **Carbone's in Dallas opened in 2012 and isn't related to Carbone in New York, which opened in 2013**. Carbone's was named for Barsotti's great-grandfather's restaurants that operated in New York and New Jersey for more than 60 years.

(App'x, p. 000030-031 at ¶ 24, p. 000187 (emphasis added)). Simply put, there can be no legitimate dispute that Defendants' goods and services are confusingly similar to Plaintiff's.

## III.  LEGAL STANDARD.

To prevail on a motion for preliminary injunction, a plaintiff must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiff will suffer irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve

the public interest.  *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008); *see also Brainstorm CC, LLC v. Doe 1*, No. 4:20-CV-554, 2020 WL 8267578, at *2 (E.D. Tex. July 21, 2020) (applying the same four-prong test in granting a temporary restraining order).  All these elements are satisfied here.

IV.   **ARGUMENT .**

   A.   **Carbone's Is Substantially Likely to Succeed on the Merits.**

Carbone's is substantially likely to prevail on the merits of its claims for trademark infringement.  To establish common law trademark infringement, a plaintiff must show that (1) it has a protectable right in the mark, and (2) that there is a likelihood of confusion between the marks.  *Paulsson*, 529 F.3d at 309; *Fletcher's Original State Fair Corny Dogs, LLC v. Fletcher-Warner Holdings*, LLC, 434 F. Supp. 3d 473, 492 (E.D. Tex. 2020); *see also Mary Kay Inc. v. Anderson*, 2018 WL 2230623 at *3 (N.D. Tex. May 16, 2018).  As set forth below, Carbone's establishes each of these elements, and thus, a preliminary injunction is appropriate.

   1.   **Carbone's Has Prior Protectable Rights in Its Common Law Mark**

Carbone's owns valid, protectable, and senior common law trademark rights in the CARBONE'S Mark in connection with ready-made and pre-packaged Italian food in Texas and its restaurant and bar services since at least August 2011.

As to the use of the Mark to indicate Plaintiff's restaurant and bar services, as set forth in greater detail in Section II.A, above, the CARBONE's Mark has served as a source identifier of Plaintiff's bar and restaurant services since 2011 through, at least, the use of advertising. Such advertising and press coverage is sufficient to establish priority in a mark used to indicate services. *See King Aerospace, Inc. v. King*, No. 05-19-00245-CV, 2020 WL 2079177, at *4 (Tex. App. Apr. 30, 2020) ("A mark is deemed to be in use in commerce when it is used or displayed in the sale **or advertising** of services rendered in commerce.") (emphasis added); *Wilson v. Tessmer L. Firm,*

*PLLC*, 483 F. Supp. 3d 416, 425 (W.D. Tex. 2020), reconsideration denied, No. 5:18-CV-1056-DAE, 2021 WL 7448751 (W.D. Tex. Mar. 4, 2021) (finding that Plaintiff established ownership of service trademark through evidence of "a variety of advertisements and advertising materials prominently displaying the Mark in connection with Plaintiff's legal services."); *Dallas Cowboys Football Club, Ltd. v. Am.'s Team Properties, Inc*., 616 F. Supp. 2d 622, 633 (N.D. Tex. 2009) ("To establish public identification of a mark with a product or service, a court may look to use of the mark in 'advertising brochures, catalogs, newspaper ads, and articles in newspapers and trade publications,' and media outlets such as television and radio.") (*quoting T.A.B. Systems v. Pactel Teletrac*, 77 F.3d 1372, 1375 (Fed.Cir.1996); *see also Johnny Blastoff, Inc. v. Los Angeles Rams Football Co*., 188 F.3d 427, 434 (7th Cir. 1999) ("For the purpose of establishing public identification of a mark with a product or service, the fact-finder may rely on the use of the mark in 'advertising brochures, catalogs, newspaper ads, and articles in newspapers and trade publications,' . . . as well as in media outlets such as television and radio."); *Diarama Trading Co. v. J. Walter Thompson U.S.A., Inc.,* No. 01CIV.2950(DAB)(DCF), 2005 WL 2148925, at *7 (S.D.N.Y. Sept. 6, 2005), *aff'd sub nom. Diarama Trading Co. v. Thompson*, 194 F. App'x 81 (2d Cir. 2006) ("'[P]ublic identification' of a trade name may be inferred 'on the basis of indirect evidence regarding ... use of the word or phrase in advertising brochures, catalogs, newspaper ads, and articles in newspapers and trade publications,' . . . , and third-party public use of the term in the trade and by the news media inures to the benefit of the claimant of the priority trade name rights.") (*quoting T.A.B. Syst. V. Pactel Teletrac*, 77 F.3d 1372, 1375 (Fed.Cir.1996)).

The use of advertising to establish first use of a service mark is codified in the US Code Section that sets forth definitions relevant to Trademarks: "The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right

in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce. . . **on services when it is used or displayed in the sale or advertising of services** and the services are rendered in commerce . . . ." 15 U.S.C.A. § 1127. As such, Carbone's owns common law rights in the Mark dating back to 2011, which is well prior to any use of the confusingly similar mark by Carbone-MFG in 2013. *Union Nat. Bank Tex., Laredo, Tex. v. Union Nat. Bank Tex., Austin, Tex.*, 909 F.2d 839, 842–43 (5th Cir. 1990) ("Ownership of trademarks is established by use, not by registration. The first one to use a mark is generally held to be the "senior" user and is entitled to enjoin other "junior" users from using the mark, or one that is deceptively similar to it."). Accordingly, Carbone's has trademark rights in the use of CARBONE'S Mark and name to indicate its services beginning in 2011.[2]

As to the use of the Mark to indicate Plaintiff's goods, as set forth in greater detail in Section II.A above, Plaintiff has used the CARBONE'S Mark in connection with its prepackaged foods and related goods since its opening in April 2012. "To establish priority [in a mark used for goods], a mark must be used in a bona fide sale to create an impact on the buying public." *Dallas Cowboys Football Club, Ltd. v. Am.'s Team Properties, Inc.*, 616 F. Supp. 2d 622, 633 (N.D. Tex. 2009); *see also Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260, 1264–65 (5th Cir. 1975) ("neither conception of the mark. . . , nor advertising alone establishes trademark rights at common law. . . . Rather, ownership of a trademark accrues when goods bearing the mark are placed on the market.") (internal citations omitted). Accordingly, Carbone's has trademark rights in the use of CARBONE'S Mark to indicate its goods beginning no later than April 2012.

---

[2] Plaintiff anticipates the Defendant will attempt to argue that Carbone-MFG's first use of the CARBONE Mark predates Carbone's, based on the date of Carbone's actual opening of the restaurant in April 2012 compared to the filing of Carbone-MFG's trademark application in January 2012. However, as pled in detail in Plaintiff's operative complaint, Carbone-MFG's trademark was acquired via fraud on the trademark office, and thus, is not entitled to nationwide rights.

Based on the foregoing, Carbone's has trademark priority over Carbone-MFG's use of the Mark. According to Defendant's trademark registration for the CARBONE RESTAURANT mark for services, the first use of the Mark in relation to restaurant and bar services was around March 2013—and in no event earlier than January 2012—the date that Defendants filed their Section 1(b) trademark application.  (App'x, p. 000031 at ¶ 25, p. 000193). Plaintiff anticipates that Defendants will argue that, by virtue of having a federally registered mark they have rights across the entire U.S., including in Dallas. However, such an argument fails because "[n]either application for nor registration of a mark at the federal level wipes out the prior nonregistered, common law rights of others." *Dallas Cowboys Football Club, Ltd. v. Am.'s Team Properties, Inc.*, 616 F. Supp. 2d 622, 633 (N.D. Tex. 2009) (citation omitted) (recognizing "in a priority dispute between a senior common law user and a second-in-time [intent-to-use] applicant, the senior common law user will prevail."). The *Dallas Cowboys* court explained that "[t]he nonregistered rights of a senior user continue and are not erased by the later federal registration of a junior user." *Id.* (citation omitted). Thus, in *Dallas Cowboys*, the court held that the Cowboys had trademark priority and cancelled defendant's infringing mark because "[i]t is clear that the Dallas Cowboys acquired common law rights in the 'America's Team' mark more than a decade before Defendant's predecessor in interest." *Id.* at 634. Similarly, here, Carbone's is the senior trademark user of the Mark—and thus, Carbone-MFG's federal registration does not "wipe[] out" Carbone's rights.

As to geographical scope, the Fifth Circuit has "held that a 'state' is the appropriate geographical region when considering trademark disputes." *Robin Singh Educ. Servs. Inc. v. Excel Test Prep Inc.*, 274 F. App'x 399, 405 (5th Cir. 2008); *see also Sheila's Shine Prod., Inc. v. Sheila Shine, Inc.*, 486 F.2d 114, 124 (5th Cir. 1973) (recognizing that "a state is an appropriate territory by which to define trade areas when two parties are competing over the right to use the same

12

mark"). While Carbone's is presently only located in Dallas, Carbone's often receives calls from consumers from different areas all over Texas asking to eat at Carbone's and/or order its prepackaged food despite residing hours away. (*See* App'x, p. 000004 at ¶ 7). Accordingly, consumers across the entire State of Texas associate the CARBONE'S Mark with Plaintiff's foods and services—confirming that the geographic scope of the CARBONE'S Mark is the entire state.

Based on the foregoing—that Carbone's has prior protectable rights in its CARBONE'S Mark—Carbone's is entitled to an injunction prohibiting Carbone-MFG from using the Mark, and any other mark that is deceptively similar to it in Texas.

> **2.    Carbone MFG's Use of the Mark Has Already Caused Actual Confusion and Is Likely to Continue Causing Confusion In The Future.**

There can simply be no legitimate dispute that Carbone-MFG's use of the name CARBONE in Dallas in connection with restaurant and bar services, and with pre-packaged food goods, is actually confusing to consumers and will continue to be likely to cause confusion in the future. Indeed, as set forth in detail in Section II.C above, Carbone-MFG's use of the CARBONE's Mark has already caused an extraordinary amount of actual confusion—which is the "best" evidence of likelihood of confusion. *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 203-204 (5th Cir. 1988) (internal citations omitted). Indeed, "[t]here can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion." *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (5th Cir. 1971). Further, to determine whether the use of a mark is likely to create a likelihood of confusion in the future, the Fifth Circuit considers eight non-exhaustive factors or "digits of confusion." *Elvis Presley Enters., Inc.*, 141 F.3d 188 at 194; *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008). These factors or digits include: "(1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets

and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, (7) any evidence of actual confusion[,]'...[and] (8) the degree of care exercised by potential purchasers." *Elvis Presley*, 141 F.3d at 194; *see also Fletcher's*, 434 F. Supp. 3d at 490.  The digits are flexible and do not apply mechanically; a finding of likelihood of confusion need not be supported even by a majority of the factors. *Elvis Presley*, 141 F.3d at 194.  Here, as set forth below, each of the digits of confusion weigh in favor of Carbone's.

### a)       The Type of Mark Allegedly Infringed.

The CARBONE'S Mark is commercially strong and inherently distinctive. The Fifth Circuit analyzes the strength of a trademark under two factors: (1) where the mark falls on a spectrum from weak to strong:  from descriptive, to suggestive, to arbitrary, or to fanciful; and (2) the standing of the mark in the marketplace, i.e., its commercial strength.  *Am. Rice, Inc.*, 518 F.3d at 330. Here, CARBONE'S is an arbitrary term, rather than descriptive or suggestive, since the term "Carbone's" does not otherwise generally relate to Italian food. "[A]rbitrary and fanciful terms or phrases are those which are either coined words or words which are not suggestive of the product or service." *Union Nat. Bank of Texas, Laredo, Tex. v. Union Nat. Bank of Texas, Austin, Tex.*, 909 F.2d 839, 845 (5th Cir. 1990). Specifically, "the term 'arbitrary' refers to ordinary words which do not suggest or describe the services involved." *Id*. Examples of arbitrary trademarks include "IVORY" for soap, "ROLEX" for watches, and "KLUGE" for printing presses. *See id; Rolex Watch U.S.A., Inc. v. BeckerTime, LLC*, No. 4:20-CV-01060, 2022 WL 286184, at *3 (N.D. Tex. Jan. 31, 2022); *Brandtjen & Kluge, Inc. v. Prudhomme*, 765 F. Supp. 1551, 1568 at ft. 20 (N.D. Tex. 1991); *See also Armco, Inc. v. Armco Burglar Alarm Co*., 693 F.2d 1155, 1159–60 (5th Cir.1982) (holding that the "Armco" mark was arbitrary as applied to a steel company); *Sun Banks of Florida, Inc. v. Sun Fed. Sav. & Loan Ass'n*, 651 F.2d 311, 315 (5th Cir.1981) (noting that the "Sun" mark was arbitrary as applied to a financial holding company); *Amstar Corp. v. Domino's*

14

*Pizza, Inc.*, 615 F.2d 252, 260 (5th Cir.1980) (holding that the "Domino" mark was arbitrary as applied to sugar and related products). Here, again, the term CARBONE'S does not suggest of describe Italian restaurant services or prepackaged foods, and thus, is arbitrary.

Further, the CARBONE'S Mark is commercially strong in Dallas and Texas where the Mark has been associated exclusively and continuously with Carbone's for restaurant and bar services since 2011. *See Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 330 (5th Cir. 2008) (commercial strength "is the standing of the mark in the marketplace"). Again, as a result of its continued use, marketing of its products, other business generation efforts to promote the Mark, as well as the numerous favorable reviews and accolades from Texas consumers and press, consumers identify the CARBONE'S Mark as indicating the source of high-quality Italian restaurant services and pre-packaged foods. As such, CARBONE'S Mark is entitled to strong protection. *Savage Tavern, Inc. v. Signature Stag, LLC*, No. 5:21-CV-078-H, 2022 WL 686870, at *11 (N.D. Tex. Mar. 8, 2022) ("Strong marks receive 'the widest ambit of protection'") *(quoting Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 982 F.3d 280, 289 (5th Cir. 2020); *see also A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 231 (3d Cir. 2000) ("a [conceptually] strong mark should weigh in favor of a senior user").

### b)    The Similarity Between The Two Marks.

The name used by Carbone-MFG, CARBONE, is essentially identical to the CARBONE'S Mark in appearance, sound, and meaning—which are the factors considered when assessing similarly. *Elvis Presley*, 141 F. 3d at 201; *Fletcher's*, 434 F. Supp. 3d at 491 (assessing the similarity of the competing marks requires "consideration of the marks' appearance, sound, and meaning"). It is clear that the marks at issue here look and sound the same. The *only* difference is that Carbone's ends with an "'s." However, "singular/plural distinctions [are] ***insignificant*** when considering similarities between marks." *Bisous Bisous LLC v. The Cle Grp., LLC*, 3:21-CV-1614-

15

B, 2021 WL 3618042, at *6 (N.D. Tex. Aug. 16, 2021) (emphasis added). The Second and the Sixth circuits agree. *See Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 535 (6th Cir. 2014); *Mushroom Makers, Inc. v. R. G. Barry Corp.*, 580 F.2d 44, 47–48 (2d Cir. 1978). In *Bisous Bisous*, "[t]he only difference between Bisous Bisous's word mark "Bisous Bisous" and Bisou Dallas's use of the word "Bisou" is that Bisou Dallas uses the word in the singular (without an "s" on the end), and Bisou Dallas does not repeat the word twice as Bisous Bisous does." 2021 WL 3618042, at *6. As such, the court found that "the marks are similar, and this factor weighs in favor of Bisous Bisous." *Id.* Here, the marks are even more similar than the marks in *Bisous Bisous* given that Carbone's and Carbone-MFG each only use the name Carbone once, one with an "'s" and one without. Thus, this factor weighs heavily in favor of Carbone's.

### c)      The Similarity of The Products or Services

This factor weighs heavily in favor of Carbone's. Carbone's and Carbone-MFG offer the same services (restaurant and bar services—particularly Italian restaurant services) and goods (pre-packaged Italian food). "The greater the similarity between products and services, the greater the likelihood of confusion." *Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 505 (5th Cir. 1980); *see also Fuji Photo Film,* 754 F.2d at 596. Here, on their face, the goods and services at issue are more than just similar, they are identical. Given this and given that Carbone's and Carbone-MFG are both in the same city, off the same street, on the same side of the street, just 2.3 miles away from each other, this factor further favors Carbone's. *See Bisous Bisous,* 2021 WL 3618042, at *7 (finding that "this factor favors Bisous Bisous because the products and services at issue here—restaurant services and French-inspired food—are similar.").

### d)      The Identity of The Retail Outlets and Purchasers

Given the identical goods and services here, it is no surprise that the consumers of Carbone's and Carbone-MFG are nearly identical and so are their retail outlets. The consumers of

Carbone's and Carbone-MFG all have the same trait: an attraction to Italian-inspired dining and food.  Thus, there is an "identity of purchasers" here. *See Exxon Corp.,* 628 F.2d 500, 505 (finding "identity of purchasers" because both parties' customers drive cars). Further, the establishments also have similar purchasers due to their proximity. *See Fletcher's* 434 F. Supp. 3d 473 at 492 (granting preliminary injunction and finding identity of purchasers based in part on the fact that the parties shared a geographic area). "The greater the overlap between retail outlets and purchasers, the greater the likelihood of confusion." *Id.*   As such, this fourth digit also favors Carbone's.

**e)      The Identity of The Advertising Media Used**

The fifth digit of confusion also weighs heavily towards a finding of confusion because the parties use the same advertising channels to target the same market.  Both parties rely in part on their websites and social media, including the same platforms such as Facebook and Instagram. (App'x, p. 000029 at ¶ 13, p. 000193). Carbone's included its Mark on its website since as early as April 19, 2012. (App'x, p. 000029 at ¶ 13, p. 000159-162).  Comparatively, Carbone-MFG launched its website at the URL https://carbonedallas.com/, which is only a letter away from the URL of the Carbone's at http://carbonesdallas.com/. Undoubtedly, consumers have been and will continue to be accidentally misdirected to the wrong restaurant.

In addition to their websites, both parties also rely on online review websites and accounts such as Yelp, Trip Advisor, and Google to market and advertise to their consumers. (App'x, p. 000030 at ¶ 18-20, p. 000163-183. 000212); *see Exxon Corp*., 628 F.2d 500, 506 (noting use of virtually identical advertising media and that "both parties aim at the Houston market"); *Scrum All., Inc. v. Scrum, Inc*., No. 4:20-CV-00227, 2020 WL 4016110, at *12 (E.D. Tex. July 16, 2020) (finding that the fifth factor weighs in favor of confusion because both parties "market[] on the Internet" and "advertise on social media" despite defendant's argument that the parties' marketing

17

materials are "very different" and finding balance of factors "point overwhelmingly" in favor of a preliminary injunction).   In addition, Carbone's and Carbone MFG have also both received publicity from the same publications focused on food and dining in Dallas and receive press coverage from the same local newspapers. (App'x, p. 000028-030 at ¶ 8-13, p. 000116-158).

"The greater the similarity in the [advertising] campaigns, the greater the likelihood of confusion." *See Fletcher's*, 434 F. Supp. 3d at 492; *see also Elvis Presley*, 141 F.3d at 197 ("The use of a mark in advertising is highly probative of whether the mark creates a likelihood of confusion in relation to another mark.").   This is particularly true in the case of service marks, where "advertising is of even greater relevance" and the mark "cannot be isolated from the advertising in which it appears." *Id.* at 197.   This digit of confusion favors Carbone's.

### f)   Defendant's Intent

Defendants cannot legitimately deny that they had actual knowledge of Carbone's trademark rights before opening its Carbone-MFG restaurant in Dallas, or selling its pre-packaged sauces.   Again, Plaintiff sent a cease-and-desist letter to Defendants in December 2021—four months before Carbone-MFG opened—that detailed Carbone's trademark rights and demanded that Defendants desist from opening their Carbone-MFG restaurant. (App'x, p. 000035 at ¶ 8-13, p. 000227). Thus, it appears that Defendants chose to willfully infringe Carbone's trademark rights despite having months to change tracks and proceed with opening their Italian restaurant under another name.   However, even if Defendants had been unaware of Carbone's rights, "an innocent intent in adopting a mark does not immunize an intent to confuse in the actual use of a mark." *Elvis Presley*, 141 F. 3d at 203.   An inference that confusion is likely may arise from other circumstances that suggest an intent to confuse, including a party's failure to take reasonable steps to minimize the risk of confusion. *Id.*   Irrespective of Carbone MFG's intent in adopting the confusingly similar mark, its continued use of the mark after it was advised of actual confusion

18

indicates willfulness.  Nevertheless, proof of intent is not necessary for a finding of a likelihood of confusion, much less for this Court to issue an injunction.  *Fuji Photo Film Co.*, 754 F.2d at 597 (5th Cir.1985) (noting that "[w]hile evil intent may evidence unfair competition and deception, lack of guile is immaterial") (internal citations omitted); *Am. Rice*, 518 F.3d at 333 (evidence of intent to confuse is not necessary for a court to enter an injunction).

It cannot go without being mentioned that, when Carbone-MFG opened, it also opened a second restaurant that shares the same building but operated under a different name: VINO.  As described on Plaintiff's website: "Located just across the courtyard from sister restaurant Carbone in the Dallas Design District, Vino is a new concept from Major Food Group . . . The service at this candlelit trattoria is polished and warm, while the menu features an extensive selection of handmade pastas, Sicilian pizzas, fresh gelato, and entrées like a signature fried veal chop." (App'x, p. 000246 at ¶ 9, p. 000280).  As stated on Defendant's website, VINO is "new"—and thus, on information and belief, it is not Defendants' practice to open two restaurants that share the same space but under two different names.  Further, when Defendants initially announced their intent to open Carbone-MFG, there was no mention of VINO. (App'x, p. 000030-031 at ¶ 24, p. 000187). This begs the question of why Defendants split the Carbone-MFG restaurant in half and named one half VINO.  While investigation into this issue is in its infant stages, Plaintiff believes that it is likely that Defendants opened VINO to provide themselves with a 'fall back' position in the event that Carbone's enforced its common law trademark rights. Again, it is indisputable that Defendants knew that Carbone-MFG was infringing Carbone's rights—but Defendants chose to take the risk that they might get away with their infringement anyway.  The opening of a second, extremely similar restaurant located in the same building (and sharing a common patio) would provide Defendants with a way to steal the consumer good-will and reputation of Plaintiff for as

long as possible, and then shift those ill-gotten gains to the new VINO mark. However, for purposes of this motion, and setting VINO issues aside, this digit weighs in favor of Carbone's.

### g)      Evidence of Actual Confusion

Actual confusion is "the best evidence of a likelihood of confusion.'" *Elvis Presley*, 141 F.3d. at 203–204.  As has been stated throughout this Motion, Carbone's has presented evidence of hundreds, if not thousands, of instances of actual confusion. These examples are alone sufficient to show actual confusion. *See Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 486 (5th Cir. 2004) ("To show actual confusion, a plaintiff may rely on anecdotal instances of consumer confusion"). As such, this digit also weighs in favor of confusion.

### h)      The Degree of Care Exercised by Potential Purchasers

The greater the degree of care exercised by potential consumers in selecting the goods or services, the lesser the likelihood of confusion; however, the converse is also true—less degree of care results in a higher likelihood of confusion.  *Savage Tavern, Inc. v. Signature Stag, LLC,* No. 5:21-CV-078-H, 2022 WL 686870, at *18 (N.D. Tex. Mar. 8, 2022) ("Where items are relatively inexpensive, a buyer may take less care in selecting the item, thereby increasing the risk of confusion.") (quoting *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.,* 550 F.3d 465, 483 (5th Cir. 2008)). In *Savage Tavern*, the court noted that t-shirts costing $90 were not an "expensive item" for purposes of this digit of confusion. *Id*. Here, the goods and services at issue are similarly inexpensive—i.e., less than $100. (App'x, p. 000027-028 at ¶ 7, p. 000114). Further, food dishes are not such "a 'big ticket' item" that purchasers "are likely to exercise great care" in selecting them. *See RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 707 (S.D. Tex. 2009) (collecting cases). Since items such as food/beverages are generally inexpensive, a buyer takes less care in selecting them, thereby increasing the risk of confusion.  *See Fletcher's*, 434 F. Supp. 3d at 495 (noting that plaintiff and defendant's corndogs

were "relatively inexpensive").  As such, this final digit weighs in favor of confusion.

As set forth throughout, Carbone's is likely to prevail on its claims for trademark infringement.  Indeed, the foregoing confirms the common-sense consequence of Defendants' actions: by using a nearly identical mark (Carbone's v Carbone) in association with the same goods and services (Italian restaurants and pre-packaged foods), consumers are and will be confused, misled, or deceived as to the source of the goods and services.

**B.    Carbone's Will Suffer Irreparable Harm if Carbone-MFG is Not Enjoined.**

Since Carbone's has shown likelihood of confusion, Carbone's is entitled to a presumption of irreparable harm. *See Savage Tavern, Inc. v. Signature Stag, LLC*, No. 5:21-CV-078-H, 2022 WL 686870, at *20 (N.D. Tex. Mar. 8, 2022) (granting preliminary injunction because "Signature Stag has demonstrated that there is a likelihood of confusion, so there is a likelihood of an irreparable injury, too."). Indeed, the Fifth Circuit has held that irreparable injury is presumed whenever there is a likelihood of confusion. *See Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013) ("All that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion–injury is presumed."); *see also Houston Cigar All. V. Off. Houston Cigar Wk. LLC*, 2021 WL 1416875, at *15 (S.D. Tex. Apr. 14, 2021).

This presumption has recently been reaffirmed. Indeed, as of December 27, 2020, the Lanham Act provides: "A plaintiff seeking any ... injunction [under § 1125(a), (c), or (d)] ***shall be entitled to a rebuttable presumption of irreparable harm*** ... ***upon a finding of likelihood of success on the merits...in the case of a motion for a preliminary injunction or a temporary restraining order.***" 15 U.S.C. § 1116(a); *see also Suzie's Brewery Co. v. Anheuser-Busch Companies, LLC*, 519 F. Supp. 3d 839, 855 (D. Or. 2021) ("Because Plaintiff has shown a likelihood of success of the merits on it motion for a temporary restraining order to enjoin Defendants' violation of 15 U.S.C. § 1125(a), Plaintiff is entitled to the benefit of the rebuttable

presumption provided in § 1116(a)."); *see also Roto-Rooter Corp. v. Garcia*, No. 4:20-CV-00497, 2021 WL 327569, at *3 (E.D. Tex. Feb. 1, 2021) (applying the presumption of harm in granting Plaintiff's request for a permanent injunction).  This presumption applies to Carbone's.

But even without the statutory presumption, the facts make clear that Carbone's has been harmed already and will continue to suffer irreparable harm.  Carbone-MFG's use of its deceptively similar mark is undermining consumers' association of the Mark with Carbone's and has diminished and diluted the value of Plaintiff's Mark. This is the type of irreparable injury that Court's hold warrants injunctive relief.  *See Paulsson*, 529 F.3d at 312 (stating that the "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill" and that "[t]he absence of an available remedy by which the movant can later recover monetary damages may be sufficient to show irreparable injury"). Carbone-MFG's use of the Mark constitutes irreparable harm because it will cause Carbone's to lose control over the quality associated with its name. *TGI Friday's Inc. v. Great Nw. Restaurants, Inc.*, 652 F. Supp. 2d 763, 771 (N.D. Tex. 2009) ("lost control poses a substantial threat of injury to [] reputation and the goodwill it has built in its brand" and "[s]uch injury is irreparable, as it cannot be remedied through monetary damages."); *see also 7-Eleven Inc. v. Puerto Rico-7 Inc.*, No. 3:08-CV-0140B, 2009 WL 4723199, at *9 (N.D. Tex. Dec. 9, 2009) ("When a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods constitutes immediate and irreparable harm, regardless of the actual quality of the defendants goods[] The injury lies in the fact that the plaintiff no longer can control its own reputation and goodwill.") (citation omitted).

Moreover, Carbone's has already shown confusion among not just its actual and potential consumers, but also among retail stores, vendors, and supermarkets. (App'x, p. 000004 at ¶ 11, p. 000013). Monetary damages would not replace these lost potential consumers and vendors.

Carbone-MFG has already benefitted on the Carbone's name and hard-earned reputation in Texas by confusing consumers into purchasing the Carbone-MFG packaged sauces. *Id.* Further Carbone-MFG will continue to misdirect customers into purchasing even more of Carbone-MFG's Italian food via its restaurant in Dallas, Texas. These misdirected customers intended for Carbone's evidence the dilution and damage to CARBONE'S Mark and will continue to do so. This is devastating for a small independent business like Carbone's that relies on word of mouth promotion and its reputation for providing quality Italian food and restaurant services.  Carbone's is unlikely to ever know exactly how many customers and sales it lost and will continue to lose due to the confusion caused by Carbone MFG's infringement—which is why such harm is irreparable.

Carbone-MFG's infringement has resulted in the impairment to Carbone's goodwill, reputation, and customer base. Carbone's has already been irreparably harmed to an extent not yet determined and will continue to be irreparably damaged by such acts in the future unless Defendants are preliminarily and permanently enjoined.

### C.     The Balance of Hardships Favors an Injunction.

The balance of hardships ordinarily weighs against a party that is found to be infringing trademarks in violation of the Lanham Act. *7-Eleven,* 2009 WL 4723199, at *10 ("[C]ourts usually hold that when defendants improperly use a plaintiff's trademark, the threatened harm to the plaintiff outweighs the threatened harm to the defendants.") (citation omitted).  The requested preliminary injunction would require that Carbone-MFG simply observe its already-existing obligations to not infringe Carbone's protected mark. Any potential costs to Carbone-MFG for rebranding is self-inflicted since Carbone-MFG chose to proceed with an infringing mark despite Carbone's clear concerns and communications of the inevitable confusion.  *Fletcher's*, 434 F. Supp. 3d at 497 ("When the only hardship that the defendant will suffer is lost profits from an

activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration.") (internal citations omitted). Further, Carbone-MFG only recently opened, and thus, it will have little harm compared to the long-established Carbone's. *See Scrum*, 2020 WL 4016110, at *17 (granting a preliminary injunction for plaintiff where defendant "will suffer little comparable harm in stopping the use of recently created and introduced [marks].").

To be clear, Carbone-MFG chose to proceed with its infringing mark *after* Defendants received a cease-and-desist letter mailed in December 2021, and thus knew the risks associated with such infringement. (App'x, p. 000035 at ¶ 31); *see Elvis Presley*, 141 F.3d at 205 ("Any acts after receiving a cease-and-desist letter are at the defendant's own risk because it is on notice of the plaintiff's objection to such acts."). What is more, Carbone-MFG's costs would be minimal since Carbone-MFG can continue operating its restaurant under a different, non-infringing name. Indeed, Carbone-MFG operates a restaurant under the name "VINO" in the same building as Carbone-MFG, which also offers pastas, pizzas, wine, cocktails and desserts. (App'x, p. 000032-033 at ¶ 29). Carbone-MFG's harm, if any, was caused by its own infringing activity, and is far outweighed by the loss of goodwill and control of that goodwill already suffered by Carbone's. As such, the balance of hardships in this case strongly favors Carbone's.

### D.    The Public Interest Would Be Best Served by the Issuance of an Injunction.

Since Carbone's has shown a likelihood of success on the merits, it has demonstrated that a preliminary injunction will serve the public interest. *See Fletcher's*, 434 F. Supp. 3d at 497 ("Because Fletcher's has met its burden to show a likelihood of success on the merits concerning its infringement claim against Defendants, it has also shown that a preliminary injunction will serve the public interest."). The public interest is served by enjoining the improper use of trademarks and making such use unprofitable. *See Paulsson*, 529 F.3d at 313 (affirming that enjoining an infringing user serves the public interest); *see also Crenshaw Media Grp. LLC v.*

24

*Davis*, 2018 WL 3496473, at *3 (N.D. Tex. July 20, 2018) ("the public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks.") As such, the requested injunction will serve the public interest and is warranted.

## V.    <u>CONCLUSION.</u>

For the foregoing reasons, this Court should grant Carbone's request for injunctive relief.[3]

Date: July 13, 2022                            **MICHELMAN & ROBINSON, LLP**

                        By:    <u>/s/ Matthew E. Yarbrough</u>
                               Matthew E. Yarbrough
                               Jason A. Blackstone
                               Richard Kim
                               Jennifer A. Mauri
                               Adam M. Korn
                               Attorneys for Plaintiff
                               Carbone's Fine Foods and Wines, LLC

---

[3]Again, Carbone's requests this Court to enjoin Carbone MFG from all use of the term "CARBONE" as a source indicator of goods or services in the state of Texas. Non-exclusive exemplars of such uses are described in greater detail in the concurrently filed [Proposed] Order.

## **CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that on July 12, 2022, I conferred with Johanna Schmitt and Jeremy Fielding, the attorneys for Defendants CARBONE RESTAURANT LLC, CARBONE FINE FOOD LLC, THE MAJOR FOOD GROUP LLC, and MAJOR INTELLECTUAL LLC to determine whether this motion is opposed.  Defendants oppose the relief sought by Plaintiff.

Dated: July 13, 2022                            By: */s/ Matthew E. Yarbrough*
                                                          Matthew E. Yarbrough
                                                          *Attorney for Plaintiff*
                                                          *Carbone's Fine Foods and Wines, LLC*

26